IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KIEVA PLEAS, INDIVIDUALLY, AND AS DULY
APPOINTED NEXT FRIEND FOR THE MINOR
K.W.,

            Plaintiff,

      vs.                                    Case No. 10-2600-JTM

FIRST STUDENT, INC., ET. AL.,

            Defendants.

MEMORANDUM AND ORDER

First Student, Inc., has filed three summary judgment motions (Dkt. Nos. 121, 123, and 125) and a Motion to Certify (Dkt. No. 129). First Student contends it cannot be liable for its employee's failure to use a safety restraint system under Kansas law. First Student also contends that no facts support plaintiff's negligent retention and negligent training claims. Because Kansas law does not prohibit evidence of the nonuse of a seatbelt to prove direct negligence, the first motion for summary judgment and the motion to certify are denied. Further, plaintiff has presented sufficient facts creating a genuine issue of material fact on the negligent retention and negligent training claims. Therefore, the court denies First Student's remaining two motions.

**I. Uncontroverted Facts**

    *A. The Accident*

    On September 4, 2009, a bus driven by a Devora Engel, a First Student employee, picked up K.W., the plaintiff's minor child.  K.W. has been in a wheelchair "all [her] life basically." Dkt. No. 122, Ex. 2, pg. 18. Typically, she uses an electric wheelchair, but she was using a manual wheelchair on September 4, because the electric motor had burned out. After K.W. got onto the bus, Ms. Engel strapped the wheelchair onto the bus. K.W. also testified that she was strapped into the wheelchair with the chair's gate belt. According to Ms. Engel, she strapped K.W. into the wheelchair with a cloth strap attached to the wheelchair that did not have a buckle. It is undisputed that K.W. was not strapped into the bus's lap shoulder belt. The lap shoulder belt is similar to a car seat belt: one strap goes over the shoulder, a second goes across the waist, and the two meet at a buckle that clamps the person into the seat.

    After picking up K.W., Ms. Engel drove toward the Antioch and 159th street intersection and prepared to make a left turn. At this point the parties dispute when K.W. was injured. First Student presented testimony from Ms. Engel that when the left turn arrow turned green the bus moved forward and then she slammed on the brakes because the car in front of the bus stopped unexpectedly. Ms. Engel was able to stop the bus before it hit the car in front. Ms. Engel testified that she did not hear K.W. calling for help until after she had stopped the bus during the turn. But Kamarae Luster, another passenger, testified that K.W. fell before the left turn arrow turned green. K.W. fell face down out of her wheelchair. Following an investigation, First Student concluded K.W. was not properly secured in her wheelchair.

*B. First Student's Training Before the Accident*

Cary O'Brien, First Student's safety manager at Blue Valley at the time of the accident, testified that First Student held safety meetings each year in which all the drivers would come in to review key topics. In August 2008, and 2009, First Student paid its drivers to attend a "Safety Day" in which management presented material sent from the corporate office. Mr. O'Brien presented the safety material at the 2008 Safety Day. The training day started around 8:15 in the morning and continued until 1:00 or 2:00 in the afternoon. According to Mr. O'Brien, one of the topics on which he presented was wheelchair loading, unloading, and securement lasting about 45 minutes. Mr. O'Brien testified that Ms. Engel attended the 2008 Safety Day. And First Student has produced a document containing the 2008 Safety Day agenda with Ms. Engel's signature. The agenda does not specifically list wheelchair transport as a topic. And Ms. Engel did not recall attending the meeting or that she had ever been trained in wheelchair safety. Ms. Engel's name is not on the sign up sheet for the 2009 Safety Day.

Mr. O'Brien gave conflicting testimony about when he presented the wheelchair safety presentation. The first day of his deposition he testified that he gave the presentation at either the 2008 Safety Day or 2009 Safety Day, but that he did not remember which one. The second day of his deposition he clarified his answer and stated that he "vividly" remembered presenting it in 2008. Dkt. No. 137, Ex. D. pgs. 140-42. Mr. O'Brien also testified that all new drivers receive one-on-one training on how to secure a wheelchair. He did not know whether Ms. Engel received this training.

By law, First Student bus drivers are required to have 8 hours of safety training every year. First Student requires its drivers to attend 10 safety meetings a year of one hour each. During 2007, Ms. Engel's name and signature appear on five of the ten training sign in sheets. But she attended

11 hours of safety meetings from August 2007, to May 2008.

After the accident, First Student gave Ms. Engel a manual about wheelchair passengers which explained that the shoulder belt was required. Ms. Engel testified that was the first time she learned that she needed to used the shoulder belt and that she had never used the lap shoulder belt to secure K.W.'s wheelchair. She also stated that no one told her to use the shoulder belt to secure the wheelchair but that she would have used it if she had known it was required.

Judy Darlene Davis became First Student's safety manager in Blue Valley replacing Mr. O'Brien in 2010. Before or immediately after the accident, Ms. Davis had no interaction with Ms. Engel.  Ms. Davis testified that she has had conversations with Ms. Engel about Ms. Engel sitting in the back of the room during safety meetings and not paying attention. Ms. Davis also testified that Blue Valley "is a whole different animal" and that the First Student employees in Blue Valley "don't have a mentality for safety." Dkt. No. 136, Ex. E, pgs. 118-19. Ms. Davis generally testified that Blue Valley had a poor culture for safety and that she did not agree with the saying that "this is Blue Valley. This is how it's done in Blue Valley." *Id.* at 119.


## II. Summary Judgment Legal Standard

 "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact." *Id.* Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P.

56. In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hosp.*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Nat. Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove [nonmovant's] claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987) (alterations added).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Id.* Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Id.* at 250-51. Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting FED. R. CIV. P. 56(e)) (emphasis in *Matsushita*).

Finally, the court reminds the parties that summary judgment is not a "disfavored procedural shortcut." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). It is an important procedural vehicle "designed to secure the just, speedy and inexpensive determination of every action." *Id.* One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported

claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Id.*

## III. Conclusions of Law: Summary Judgment Motions

### A. Failing to Secure K.W. in the Seatbelt

First Student's first motion seeks summary judgment on the issue of whether plaintiff can sustain a negligence suit against it for First Student's failure to secure K.W. into the bus with the lap shoulder belt. First Student previously brought a Motion to Dismiss (Dkt. No. 53) on this issue, and the court denied the motion.

Both plaintiff and defendant State Farm Mutual Automobile Insurance Company contend the court must deny this motion under the "law of the case" doctrine and because Kansas law does not prohibit plaintiff's negligence suit based on the nonuse of a seat belt. "'[T]he law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1034 (10th Cir. 2000) (quoting *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991)). "The doctrine is 'based on sound public policy that litigation should come to an end and is designed to bring about a quick resolution of disputes by preventing continued re-argument of issues already decided.'" *Id.* at 1035 (quoting *Gage v. General Motors Corp.*, 796 F.2d 345, 349 (10th Cir. 1986)). But the doctrine is "'only a rule of practice in the courts and not a limit on their power.'" *Id.* (quoting *Monsisvais*, 946 F.2d at 116). The Tenth Circuit has recognized three "'exceptionally narrow' grounds for departure from that rule of practice: '(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of

the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice.'" *Id.* (quoting *United States v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir. 1998)). Thus, the district court has discretion to consider its previous rulings. *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007).

In this motion, First Student argues that a plaintiff cannot establish negligence based on a failure to secure a person in a vehicle with a seatbelt or safety restraint system. In its earlier Memorandum and Order, this court held that "Kansas law does not prohibit introduction of the nonuse of a safety restraint system to establish direct negligence in this case." Dkt. No. 94, pg. 7. Thus, the law of the case doctrine generally requires that this rule govern this issue for the remainder of the case unless one of the exceptions apply. The first two exceptions clearly do not apply—the case has not reached the trial stage and no controlling authority has made a contrary decision of the law applicable to this issue. This court must determine whether its previous ruling was "clearly erroneous and would work a manifest injustice." *See McIlravy*, 204 F.3d at 1035.

Although Kansas prohibits evidence of the nonuse of a seatbelt to determine comparative negligence or mitigation of damages, such evidence is not barred in cases in which the use of the evidence does not involve comparative negligence or mitigation of damages. Previously, this court stated:

> This case presents another instance in which § 8-1345(d) (or § 2-2504(c)) does not operate to prohibit evidence of the nonuse of a seat belt or safety restraint system. By its very language, the statute applies only to restrict evidence of nonuse to "any action for the purpose of determining any aspect of comparative negligence or mitigation of damages." KAN. STAT. ANN. § 8-1345(d) (emphasis added). "The legislature is presumed to have expressed its intent through the language it enacted. For this reason, when the language of a statute is plain and unambiguous, courts 'need not resort to statutory construction.'" *Frick v. City of Salina*, 289 Kan. 1, 8, 208 P.3d 739, 745 (2009) (citing *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025, 1042 (2007)).

Plaintiff is not seeking to offer the evidence for comparative negligence or mitigation purposes, but rather to show direct evidence of defendant's negligence. Because the statute does not prohibit non-use evidence to establish direct negligence, plaintiff may introduce evidence that defendant failed properly to secure K.W. in her restraint system. *See Gardner*, 89 F.3d at 736. As the *Gardner* court recognized, this conclusion is also supported by the interpretive tenet of *expressio unius exlusio alterius*, meaning when the legislature defines the reach of a statute, matters beyond that reach are not included. *See* 89 F.3d at 736. Additionally, this result is in harmony with the legislature's intent in enacting this statute. *See Watkins*, 245 Kan. at 761, 783 P.2d at 1297 ("By enacting [KAN. STAT. ANN. § 8-1345], the legislature intended that parents or legal guardians who failed to employ a child safety restraint system would not be barred from bringing an action against individuals whose negligence injured the child."). Prohibiting evidence of nonuse of a seat belt or safety restraint system in this case would not further this goal because the defendant is not seeking to lessen plaintiff's recovery by using the evidence.

Dkt. No. 94, pgs. 6-7 (internal footnote omitted). First Student contends this case is governed by *Rollins v. Department of Transportation*, 238 Kan. 453, 711 P.2d 1330 (1985) and *Watkins v. Hartsock*, 245 Kan. 756, 783 P.2d 1293 (1989) and that the court should grant it summary judgment under those cases.

In *Rollins*, the plaintiff was a passenger in a one-car accident that occurred when the driver lost control of the car. 238 Kan. at 454, 711 P.2d at 1331-32. At the time of the accident, the Kansas Department of Transportation was resurfacing the highway causing the surface of the roadway to extend above the highway's shoulders. *Id.* at 454, 711 P.2d at 1132. The driver of the car lost control when her right wheels dropped off of the road surface and onto the shoulder. *Id.* At trial, the district court allowed KDOT's expert to testify about the effect of the nonuse of a seat belt on the driver's ability to control the car. *Id.* at 455, 711 P.2d at 1132. In allowing the evidence, the trial judge limited its purpose to showing control of the vehicle and not to show negligence and instructed the jury accordingly. *Id.* Upon review, the Kansas Supreme Court stated that "'under the Kansas system of comparative negligence, it is not proper for a jury to consider as a negligence factor to reduce

liability and damages the failure of a passenger to use an available seat belt.'" *Id.* (quoting *Taplin v. Clark*, 6 Kan. App.2d 66, 70, 626 P.2d 1198 (1981)). The court held that "the rule propounded is equally applicable when it is someone other that plaintiff who is alleged to be at fault for a failure to use the belts." *Id.*

*Watkins* involved a two-car accident, one car driven by the plaintiff's mother and the other by the defendant. 245 Kan. at 757, 783 P.2d at 1294. The plaintiff, a three-month old baby girl, was killed in the accident. *Id.* The defendant asserted comparative negligence as a defense and sought to introduce evidence that the plaintiff's injuries were attributable, in part, to the mother's "improper use" of a child safety seat. *Id.* The plaintiff filed motions *in limine* to exclude the evidence, and the trial court sustained them. *Id.* at 757, 783 P.2d at 1295. On appeal, the Kansas Supreme Court discussed the history of Kansas seat belt law and held that evidence of misuse of a child safety restraint system, like evidence of nonuse, was inadmissible for purposes of determining comparative negligence or mitigation of damages. *Id.* at 764-65, 783 P.2d at 1299. In holding so, the court found no legally cognizable difference between nonuse and misuse. *Id.* at 765, 783 P.2d at 1299. And it found that the common law and statutory rule—"that one is not required to anticipate negligence and guard against damages which might ensue if such negligence should occur"—applies equally in both circumstances to prohibit this type of evidence. *Id.*

These cases have little application to the present case. As the court explained previously, the plaintiff here is attempting to use the evidence of nonuse of a safety restraint system against First Student to establish direct negligence. The evidence is not being used to establish comparative negligence or mitigation of damages. Nor is it being used to bar plaintiff from bringing a negligence suit against a defendant that caused the injury. *See Watkins*, 245 Kan. at 761, 783 P.2d at 1297 (citing

9

KAN. STAT. ANN. § 8-1345). The plaintiff's use of the evidence in this case does not go against the legislature's intent. As this court held earlier, Kansas law does not prohibit evidence of the nonuse of a child safety restraint system to establish direct negligence in this case. First Student's arguments to the contrary are unavailing. The court's earlier decision was not clearly erroneous and would not work an injustice. Thus, the court's earlier decision is the law of the case. Even if the law of the case doctrine did not apply, First Student's motion must still be denied because, as noted above, Kansas law does not prohibit the evidence at issue. Accordingly, First Student's Motion for Partial Summary Judgment (Dkt. No. 121) is denied.

### B. Negligent Retention

First Student also moves for summary judgment on plaintiff's negligent retention claim arguing plaintiff has no evidence to support the claim. Specifically, First Student contends it had no reason to suspect Ms. Engel presented an undue risk of harm to bus riders. It further contends there is no evidence showing Ms. Engel showed an indifferent attitude toward safety before the accident. In fact, First Student argues she attended safety meetings, one of which specifically included training on securing wheelchairs. On the other hand, plaintiff contends genuine issues of material fact remain as to whether Ms. Engel attended safety meetings, whether she paid attention at those meetings, and what First Student should have known about Ms. Engel's safety knowledge.

Under Kansas law, a claim for negligent retention arises when an employer has reason to believe that an undue risk of harm to others exists as a result of the employment of a given employee. *Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc.*, 249 Kan. 348, 362, 819 P.2d 587, 598 (1991). The employer is subject to liability only for harm that was within that risk. *Id.* "If

therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee that the employer had reason to believe would be likely to cause harm." *Id.* Whether the risk of harm is reasonably foreseeable is a question to be determined by the trier of fact. *Id.* Negligent retention is not based on the theory of vicarious liability. *Beam v. Concord Hospitality, Inc.*, 873 F. Supp. 491, 503 (D. Kan. 1994). Rather, "'a master may be liable for injury caused by the wilful wrong of his servant on the basis of his negligence in hiring or retaining such servant, entirely aside from the doctrine of respondeat superior.'" *Id.* (quoting *Plains Res., Inc. v. Gable*, 235 Kan. 580, 590-91, 682 P.2d 653 (1984)). Thus, to succeed on this claim, plaintiff must show "'some causal relationship between the dangerous propensity or quality of the employee, of which the employer has or should have knowledge, and the injuries suffered by the third person; the employer must, by virtue of knowledge of his employee's particular quality or propensity, have reason to believe that an undue risk of harm exists to others as a result of the continued employment of that employee; and the harm which results must be within the risk created by the known propensity for the employer to be liable.'" *Doe v. Unified Sch. Dist.*, 255 F. Supp.2d 1239, 1248 (D. Kan. 2003) (quoting *Kurtz v. Unified Sch. Dist. No. 308*, 197 F. Supp.2d 1317, 1320 (D. Kan. 2002)).

Here, plaintiff points to several pieces of evidence supporting her negligent retention claim. First, Ms. Engel testified she does not remember attending a Safety Day in 2008, and does not remember ever being trained on wheelchair transportation. However, Mr. O'Brien testified that he made a wheelchair safety presentation at the 2008 Safety Day and that Ms. Engel was present. This creates a genuine issue of fact on an issue material to the negligent retention claim. If K.W.'s facts are true, a jury could find that an undue risk of harm existed by virtue of Ms. Engel's continued

employment without wheelchair safety training. Next, plaintiff has presented facts tending to show Ms. Engel did not attend the required amount of training sessions in 2007, because Ms. Engel only attended five out of ten safety training meetings that year. First Student requires employees to attend 10 training meetings per year. In response, First Student argues that it does not operate on a calendar year, but rather a school year from August to May. And it has presented evidence showing Ms. Engel attended 11 hours of training from August 2007, to May 2008. Regardless of whether First Student requires 10 hours of safety training in a calendar year or a school year, plaintiff has created a triable issue of fact on this issue, which is material to her negligent retention claim. Additionally, plaintiff has presented the sign in sheet for the 2009 Safety Day and Ms. Engel's name was not on the list; further bolstering her claim.

After the accident, Ms. Engel testified that she was given a manual about wheelchair passengers which stated that the shoulder belt was required. Ms. Engel testified that was the first time she learned the shoulder belt was required and that she had never used the belt to secure K.W.'s wheelchair. She also stated that no one had ever told her to use the shoulder belt to secure the wheelchair but that she would have used it if she had known it was required. All these facts, if believed by the jury, support her negligent retention claim. Therefore, plaintiff has come forward with sufficient facts showing there is a genuine issue of material fact on this claim. Accordingly, First Student's Motion for Summary Judgment (Dkt No. 123) is denied.

Plaintiff also tries to use the testimony of Judy Davis, First Student's corporate designee and safety manager at Blue Valley, to support her claim. Ms. Davis testified that Ms. Engel was regularly inattentive at safety meetings and that she has talked to Ms. Engel about her behavior at those meetings. Ms. Davis also generally testified that Blue Valley does not place a high emphasis on

12

safety. Ms. Davis's testimony does not support plaintiff's claim. Ms. Davis became the safety manager at Blue Valley in 2010, and testified that she had no interaction with Ms. Engel before or immediately after the accident. Ms. Davis's testimony relates only to events she witnessed after the accident. The evidence that Ms. Engel did not pay attention at safety meetings and that Blue Valley does not place an emphasis on safety only pertains to the time period after Ms. Davis became the safety manager. She did not and is not qualified to offer an opinion on Ms. Engel's behavior or Blue Valley's culture before the accident. Therefore, her testimony cannot be used to show First Student had knowledge about Ms. Engel's dangerous propensity or that she was a poor quality employee. As First Student's corporate designee, Ms. Davis may present the corporation's position on safety training in general and wheelchair training specifically. But she cannot testify about events to which she has no personal knowledge during a time period when she had no interaction with Ms. Engel.

### C. Negligent Training

First Student has also moved for summary judgment on plaintiff's claim that it was negligent "[i]n allowing a company culture to be fostered that created a cavalier attitude toward safety in Ms. Engel and others." Pretrial Order, Dkt. No. 133, pg. 4. First Student contends Kansas does not recognize such a claim and that it is entitled to summary judgment. Plaintiff argues this allegation of negligence in the Pretrial Order was not a separate claim to relief but another way of alleging negligent training. The court agrees with plaintiff and will treat First Student's motion as one seeking summary judgment on the negligent training claim.

"A claim based on negligent training depends upon establishing facts showing that more or better training would have prevented the harm." *Estate of Belden v. Brown County*, 46 Kan. App.2d

247, 283, 261 P.3d 943, 968 (2011). Like the negligent retention claim, plaintiff has presented evidence establishing that there is a disputed issue of material fact on this claim. First, there is a dispute as to whether First Student trained its drivers on wheelchair safety. Mr. O'Brien has testified that he made a presentation on wheelchair safety at the 2008 Safety Day, in which Ms. Engel was present. But Ms. Engel testified that she did not remember attending the Safety Day and does not remember being trained on wheelchair safety. Second, Ms. Engel only attended five out of ten safety meetings in 2007, but completed 11 hours of training from August 2007, to May 2008. No records were presented for the 2008-2009 school year. From the records available, there is at least a triable issue of fact as to whether more or better training could have prevented K.W.'s injury. Therefore, First Student's Motion (Dkt. No. 125) is denied.

**IV. Motion to Certify**

Last, First Student requests this court to certify the following question of law to the Kansas Supreme Court: "Under Kansas law, can an individual be negligent for his or her failure to use a seatbelt/shoulder harness or other passenger restraint system within a motor vehicle to restrain a plaintiff." Dkt. No. 130, at 1. First Student sought a motion to certify previously in this case on the same issue. *See* Dkt. No. 98, pg. 1 ("Does the law of Kansas recognize a negligence claim based on the failure to use a seatbelt/shoulder harness or other passenger restraint system within a motor vehicle to restrain the plaintiff?"). This court denied the earlier motion stating "this issue is not so novel that it involves an issue completely devoid of controlling precedent under state law." Dkt. No. 109, pg. 4. For the reasons stated in that Order, and in Section III.A. above, the court denies First Student's second Motion to Certify.

14

IT IS ACCORDINGLY ORDERED this 19th day of April 2012, that First Student's Motion for Partial Summary Judgment (Dkt. No. 121) is denied.

IT IS FURTHER ORDERED that First Student's Motion for Partial Summary Judgment on Plaintiff's Negligent Retention Claim (Dkt. No. 123) is denied.

IT IS FURTHER ORDERED that First Student's Motion for Partial Summary Judgment (Dkt. No. 125) is denied.

IT IS FURTHER ORDERED that First Student's Motion to Certify Question of Law (Dkt. No. 129) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE